Good morning. My name is Hugh Levine. I represent Mr. Johnson, the defendant appellant in this matter. With respect to our Rule 5 argument, we contend that delay in bringing a federal arrestee before a judicial officer cannot be reasonable and necessary within the meaning of Rule 5 and 18 U.S.C. 3501. Where the option of bringing him before a state judicial officer has not even been considered unless attempted. How much of a delay was that? I'm sorry? How much of a delay do you say this was? How much? How much of a delay? Oh, in this case, it was a just under 24-hour delay. And you think that's fatal? I think that it's fatal because it's unjustifiable and well beyond the 6-hour safe harbor that 3501 provides. And it's totally without any excuse. We – what I'm contending is that the words in Rule 5 and the words that correspond in 3501, which relate to state judicial officers and are in mandatory language, would be rendered superfluous if, in contravention of what I believe is called the anti-superfluousness canon of statutory construction, if they were not even an attempt or a consideration of bringing the arrestee before a state officer. And in fact, in this case, this case presents a clear record of the ready availability of both federal and state judicial officers for timely presentment of Mr. Johnson, as well as a clear record that the failure to timely accomplish that presentment was due only, and I emphasize only, because of the FBI's longstanding practice in the Northern District of California of thumbing its nose at Rule 5. And the district court's endorsement of that practice constitutes clear error, which should be remedied by reversal. Well, I understand. That's kind of the purest argument, and it's attractive to me, as a matter of fact, unless there's a reason why. They did say that the magistrate judge's calendar is already set. Now, I don't know the practice in the Northern District. I was a district judge in the Southern District. So different districts do it differently. But if they do, in fact, have a calendar process that has not been challenged, they could wait for it. But your argument would be, I suppose, that they should have stopped off at one of the county courthouses and made the arraignment there. But they say, no, this is a federal case, and we should be going to a magistrate judge. And I guess that's the problem. And you're saying you've got a six-hour safe harbor. But suppose it's six hours and 30 minutes. Well, does that mean that automatically the accused wins? Nothing's automatic here, obviously, because of the use of the terms necessary and reasonable. OK, so it can be over six hours, but that's when necessary, the necessary process and reasonable. In some cases alone. OK, so the safe hour they missed, so we have to make a decision as to whether this was a reasonable process or whatever. Well, in a way you do and in a way you don't. First of all, to get back to Your Honor's question, this shouldn't be governed by what is the magistrate judge's calendar time in various districts across the country. This is a nationwide rule. It's as simple as that. And we've seen just in the cases how divergent those magistrate judges' calendar times are across the country. For example, in the record of this case alone, in the San Francisco division of the Northern District of California, the record shows that the calendar begins of the duty magistrate at 930 and typically ends around 11, whereas in the San Jose division, the record shows that the calendar begins at 9 and that the duty magistrate is available usually until 430. In the recent Red Lightning decision by this Court, which I'm going to have to discuss since it's adverse to my position, the Seattle magistrate judge's calendar ended at 230. In the United States v. Perez case, which resulted, it's a Second Circuit case we rely on, that resulted in a reversal of the conviction for Rule 5 error, the Court found that the magistrate judge was available at 625 p.m. So this cannot be determined on the basis of something as ephemeral as when a magistrate judge in some district in America decides to begin and end his calendar. It simply cannot. And that's why Rule 5. You say it can't. It can if it's reasonable. It's not going to be reasonable if delay would be built in that ignores the language of the rule about State judges. Those words are made superfluous in violation of what probably has to be the most fundamental principle of statutory construction, that all of the words of an enactment must be given meaning and effect. Well, you know what your opposition is going to argue on this one, that it's a Federal case, it's reasonable to go before the magistrate judge, and 24 hours delay is not unreasonable. That would be their argument. What would be your response? If that's their argument, I'd be very delighted to answer it, because, first of all, there are aspects of Federal procedure that directly invoke the involvement of State judges besides Rule 5 and 18 U.S.C. 3501. For example, there was, and it's cited in our brief, 18 U.S.C. 3041, which instructs State court judges, and not only judges, but actually mayors of cities, to arrest Federal prisoners and hold them at government expense, it makes clear, for further proceedings. And there are other examples. You can't write these as you practice in State court at all. Yes. I started as a prosecutor in the Manhattan district attorney's office. And it's not like the State judicial officers don't have other things to do either. I mean, do you really think they're sitting around waiting for Federal prisoners to be brought in? I really think that that's not the question. No, I'm not sure that it isn't. Again, it's reasonable. If you've got, in this case, the county courthouse might have been across the street. The San Jose courthouse wasn't far. I don't know that this is a great case to say that turning to a State authority is something you'd expect the Federal authorities to do. If you're someplace in West Texas and it's three hours to the Federal courthouse, that might be a different story. But in this case, it isn't that the Federal courthouse was so far away. The real question is, can a court organize itself in such a way as to say, look, if you're not here at the right time this morning, you've got to wait until the next day? Let me just say about this that, number one, I think that the position that the government has taken in that respect about the inability of State judges to perform this presentment duty is insulting. And, number two, the easy answer is... What's insulting about it? It's insulting because it suggests that, and they've said, and they argued to the court below, a State court judge isn't going to know what to do with a Federal case. My concern isn't that. I think the State court judge has got his own calendar to worry about. I'm not sure why it is that the Federal authorities think they should take precedence and barge into a State courthouse to get something done. They could have gone to San Jose if they thought they needed to. I'm really trying to get the State thing out of here because it isn't a situation where there was no Federal authority available. There were Federal judicial officers within a short distance. I think the question has to be, is it reasonable for the Federal judicial officers to say, our calendar is organized in such a way as that we're not going to see it until tomorrow? Your Honor's argument rewrites the rule. It's as simple as that. It not only gives no effect to the mandatory, this is mandatory language. It's couched in the words must. It just takes it right out of the rule. No. Actually, I think it's an argument that's designed to help you. I'm trying to take the State out of it because the Federal authority isn't that far away. And the question becomes, is it reasonable for the Federal court to organize its operations in such a way as to say you've got to wait until tomorrow? It cannot be a fair interpretation of this rule, nor of 3501, to take that position. And furthermore, let me just say this. This isn't rocket science here. If the United States Department of Justice had a concern about the ability of State judges to perform this very rudimentary presentment function, then all they have to do is just write a brochure that lays out for this. Judges use bench books. Judges use grids. You're shooting in the wrong direction. I haven't heard anybody on the bench question the ability of the State officers. I've got some concerns whether it makes any sense to ask them because they're busy. But that's not what your problem is here. So I'd suggest not talking about that so much and get back to the part that matters. Well, all right. In this case, we have a good position either way because, number one, at the police station the State courthouse was across the street. But when Mr. Johnson was brought to the county jail by 3 o'clock in the afternoon, even though there was a State courthouse right there, too, the Federal courthouse was 2 1⁄2 miles away, and the agent testified that he knew or fully expected that magistrate judges would be on duty and available. But he simply ignored that, just ignored it. There was no good faith here. There was no position taken that we can't do it. The fact of the matter is that he was able to get himself up to Marin, to the residence of a magistrate judge, to get his search warrant signed. The fact of the matter is that there was an entire phalanx of Federal officers, agents who were involved in this arrest who could have done it. And the fact of the matter is that no paper was necessary, even though they tried to rely on this and transmogrify it from a presentment, which does not involve a charging document, to an arraignment, which does. It's not an arraignment. And finally, I think people woke up to that concept that these are very different. Actually, I think it took Justice Souter in the Corley decision to make that clear by repeatedly stressing that it's a presentment, not an arraignment, and you don't need a paper, you don't need a complaint, you just need a magistrate. So they just somewhere nose about at this, went about their way, got their search warrant from another magistrate. They are not in good faith. There was they don't even claim that the factors of 3501, which are distance to be traveled and time, were involved here at all. And clearly, they were not involved here at all. They just thumbed their nose at the rule. Now, let me ask you to focus on another piece. Assume for a moment we agree with you that the rule has been violated. Why does it make a difference with regard to the evidence that you seek to suppress? Your Honor is asking me about harmful or harmless error. Yes. All right. It makes a difference because of this. The statements that came in as a result of the motion being denied and were heard by the jury were statements of admissions that directly connected Mr. Johnson to the gun and masks and other indicia of bank robbery that were contained in the bag in the car in which he was arrested. And these were important enough that both prosecutors in their summations referenced them, not just referenced them, but argued about them. And the second one argued so much that he committed flagrant blue error, which is part argument two of our position. And if it was such an overwhelming case, then the question is looming over everyone. How is it that the jury initially reported that they were unable to agree on three of the eight charged bank robberies? Eventually, over eight hours of deliberation, over three days, they resolved one of those in favor of a guilty verdict and hung on the other two. So just how strong a case could it have been? That is the problem here, certainly for the Doyle standard where it must be shown to be harmless beyond a reasonable doubt. I don't believe that the state of this record comes anywhere close to establishing harmlessness beyond a reasonable doubt. The standard, of course, is different for the – it's the clear error standard for the Rule 5. But these two things are inextricably intertwined here, Your Honors, because the same statements that were erroneously admitted under Rule 5 are the ones that resulted in the Doyle error. I think I should address Red Lightning because I believe it is the latest statement by this Court on Rule 5, and it resulted in an affirmance. And so it's sort of the elephant in the room here from my perspective. That case holds that overnight delay in presentment did not violate Rule 5 because it was already after the magistrate judge's 2.30 p.m. calendar in Seattle, and the defendant had been arrested in Bellingham, which was 90 miles away. I see the red light is on. Well, it is an important case. Take another minute to explain why Red Lightning doesn't bind us. Thank you for that. This does go back to the State court matter, but I have to say that the reason Red makes no mention whatsoever of the availability of a State court judge, and Bellingham is a city of 77,000 people with a branch of the State court right there where he could have been taken. And so I believe as precedent it is really distinguishable. It's distinguishable, as are many of the cases under Rule 5, because they never have gotten around to addressing the issue of this mandatory language about State courts. And I've asked this Court to address it, to take it on, and to either say that, as has been suggested here, it's really meaningless in the statute and this mandatory language is inappropriate and we're just going to ignore it, or it must be enforced and if it is, there ought to be a reversal in this case. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. My name is Mary Jean Chan. I please the Court and I represent the United States in this appeal. This Court should affirm on all grounds the District Court did not clearly err in finding that the delay between Johnson's initial appearance and his arrest was reasonable given that, first, the initial appearance took place at the very next scheduled daily magistrate calendar, second, that the agents never contrived or used the opportunity of the delay to interrogate him, and third, because the complaint was not filed and could likely not have been filed until the morning of the initial appearance. This Court asked defense counsel why, if it was possible for the courts to organize themselves in a way where they have a daily set magistrate calendar, and absolutely it is permissible, and this Court said so in Red Lightning, its recent case on the matter. In Red Lightning, this Court said that no magistrate judge is really considered reasonably available until the next daily magistrate calendar commences. That's at 624 F. 3rd at 1, sorry, 1,109. The Court also said that it's neither realistic nor reasonable to require agents to cut off interviewing within six hours to make a calendar, to make a set calendar, and that's at 1107. And in addressing Red Lightning's contention that the FBI could have tried to organize or get a specially set calendar time sets for his initial appearance, the Court said that it was, quote, reasonable not to attempt such a feat, so that the FBI was not required to try to set a specially set initial appearance where you have a situation, such as in this case, where you have a daily magistrate calendar that's set. And so Red Lightning is really dispositive in this case in showing that the district court did not clearly err in its finding that it was reasonable to delay until the next set calendar. In Red Lightning, did the defendant challenge the district court's conclusion that a substitute magistrate judge was unavailable the day he was arrested? I don't believe that the court did. There was a footnote to that effect in that case, that there was a substitute magistrate and that the district court found that there was, that he was not available. Makes a difference, doesn't it? Well, there was no evidence in this case that there was a magistrate available in this case. So I don't think it is different, because in this case, we don't have any evidence. All the evidence that's in this case on the record... I'm just suggesting that I'm not sure Red Lightning goes as far as you'd like to take it. It's an interesting case. Your Honor, I think it does state that where there's no magistrate, that the record shows that there's no magistrate that would be available other than the set calendar, that it's reasonable to wait until the next set calendar. Well, magistrate judges are available. I mean, in this case, there was a search warrant obtained from one at a different time. That was after hours. Available doesn't mean physically impossible to contact. That's absolutely correct, Your Honor. It's a reasonably available standard. So reasonable is extremely important in this case. I think the Supreme Court has emphasized, even in McLaughlin, which was a Fourth Amendment case, that these sorts of rules are intended to protect defendants' rights, but they are also balanced against the realities and practicalities of law enforcement. I understand that, but a substitute magistrate judge, whether they're available or not available, wouldn't make a big difference between that case and this case. These magistrate judges don't go home at 11. They're around. It's just a question of whether it's reasonable to interrupt the other things they're doing for this. But I'm just curious. You feel Red Lightning is a slam dunk for you. I'm not so sure. I think Red Lightning is dispositive in this case. I think it states that we could have tried to obtain somebody. In that case, the FBI, as Red Lightning proposed, Red Lightning proposed that the FBI could have gone and called somebody and tried to get the magistrate to specially set an appearance by 4.30 because the magistrates would still be available. And the Court said in that case, even though that might be the case, it was a speculative that a magistrate would, in fact, be available, even though they probably are at work and doing other things in the courthouse. And did the defendant in Red Lightning challenge that? That was part of the opinion, yes. Red Lightning challenged that and suggested to the Court of Appeals that they were not reasonable, that the agents had not been reasonable in arranging for his initial appearance by not trying to specially set something. That was raised before our Court? Yes, Your Honor. The pages, I think, that are pertinent are at 1107 through 1109. And specifically at 1108, at footnote number six, the issue of the arranging of a specially set initial appearance is the quote that I read before to the Court, that it's reasonable not to attempt such a feat. And so I think that is dispositive in this case because we're not, there was no, first of all, there was no evidence in the record that a magistrate was available. So that is sort of a presumption. And without evidence that a magistrate was, in fact, available, what this Court has said is reasonable is to say that magistrates are reasonably available when they have their set calendar. Now, with respect to the state and local judges, I think that provision is really for situations where you don't have a daily set calendar, where perhaps you're in a very large district where there are very few people, let's say, and it's very far and few between, or maybe the magistrate who is on duty is sick. I mean, that happens, too. It's not a situation where you have in this district where you do have, at least in San Francisco, a daily set calendar. And it was at 930. That was the evidence. There was no evidence in the record that a magistrate in San Jose was available. In fact, the only evidence that was in the record was that there was no set afternoon calendar in San Jose. What we know is that the officers arrested Johnson at 10 o'clock in the morning. They were entitled within the six-hour safe harbor to interview him. They did interview him. He declined to be interviewed, so the proceedings ended at noon. That means that by what was in the evidence, the 930 calendar most likely would have been over because it was almost always over by 11 o'clock in the morning, and there's no set afternoon calendar in the district. So under those circumstances, the agents were absolutely reasonable in waiting until the next morning. And what's more is that the cases in this area have all been extremely concerned about the delay as an opportunity for undue interrogation or delay for delay's sake. And there is no evidence of that in this case either. The officer's arrest of Johnson was in reaction to his actions. It wasn't a planned arrest. They didn't know that at that particular time and that particular day that he would be trying to attempt to rob a bank. In fact, they'd been tailing him for several days and he hadn't. So the timing of it was not something that was contrived by the agents. As soon as he invoked his right to silence, the officers stopped interviewing him. They never tried to interview him. In fact, the next morning when they arranged to bring him to his initial appearance, the senior agent specifically instructed the junior agent not to try to talk to him or elicit anything. And the only conversation that they had was really in the nature of pleasantries, informing him that he was going to this initial appearance. So that concern is not implicated here as well. And finally, another reason why the delay was reasonable is because under Rule 5D1A, there's a requirement that the magistrate judge at least inform the defendant at the initial appearance of the complaint and its affidavit, if there is an attached affidavit. In this case, they didn't have a complaint. They obtained a complaint and they obtained it in a timely fashion the morning of the initial appearance. But without that, it was reasonable for the officers also to think that since it was not likely that they would be able to obtain that on the same day as Johnson's arrest, that that would also be another reason going towards the reasonableness of their decision to make a delay. Well, that one may prove too much. I mean, if as a matter of routine you don't have a complaint prepared when you arrest somebody and you won't in a case, well, in this case they've been trailing him for some time. They had a pretty good idea what they were going to charge him with once they caught him in the act. But in some cases, you'll just have a criminal act. Wouldn't that suggest that there is no real time limit? Because you can always say, well, we didn't have a complaint, so it's going to take us a couple of days to pull together the information for a complaint. And so the 6-hour safe harbor is actually 48 hours. That can't be right, can it? Well, Your Honor, I think that the 48-hour rule, even McLaughlin's, states that it's not always reasonable to take up to 48 hours. It really depends on the circumstances of the case. So in that, in terms of the argument about the complaint, in this case we're not saying that it automatically pulls out to a 48-hour sort of time limit. We're simply saying that in this particular case, given that they, in addition to not being, not having a set calendar available until the next morning, that the fact that they didn't have a complaint is an additional reason that makes their decision to delay reasonable. But secondly, in this case, you know, the 48-hour rule, as I said before, isn't sort of an automatic rule of 48 hours. And the 6-hour rule also isn't an automatic 6-hour. It's a safe harbor. So between the 6 hours and the 48 hours is a whole field of reasonableness. And in certain circumstances where, for example, it would appear that the officers were trying to take advantage of that in order to interrogate or to delay, or delaying for no reason at all, that would almost certainly, you know, be subject to a finding of unreasonableness. Suppose we found that there was clear error. Yes, Your Honor. Does the appellate also have to show prejudice? Yes, Your Honor. And in this case, first, I would hope that this Court wouldn't find clear error, because I don't think it exists, but it would be harmless. Assume just for the sake of argument. I just want to know what your no prejudice argument is. Well, the argument actually was the statement was barely argued. So contrary to the defense counsel's assertion, in the closing argument, the prosecutor listed the statements only perfunctorily, stating that this was not evidence that was in a laundry list of other evidence that was consistent with his defense that he had no knowledge and no contact with the armed bank robbery or the conspiracy. It was only in reaction to defense counsel's statements, very strong statements in closing argument, that the defendant had not been involved and that he had not made any statements of any sort, that in rebuttal, the prosecutor then made some stronger arguments about the interpretation and the existence of these statements. Because the defendant objected to these as doyle error, and because we think that the Court wrongly interpreted them as being a doyle error, the Court gave a strong curative instruction, instructing the jury actually to disregard all these statements. So to the extent that the prosecutor said that these statements were suggestive of the demission of Johnson's involvement in bank robbery, the Court said you can't really take that into account. Furthermore, we know that the jury deliberated extensively. They asked to review the telephone records. They asked to review something else as well in two jury notes that they sent out. And finally, their verdict reflected a very careful weighing of the evidence because they didn't find guilty on all counts. They actually hung on two counts, counts 6 and 8. So all of that, especially under Lopez, which is at 500 F3rd and 4th. I don't understand how that helps your position with regard to harmless error or no prejudice if, in fact, there was not a conviction obtained on all counts. The jury did weigh the evidence carefully. You said they took time and were careful about it. Yes. And if there's a risk that they heard something they shouldn't have heard, how can we be confident that even if that evidence hadn't come in, the bell hadn't rung, they would have reached exactly the same result? Well, I think there's very much other evidence in the record, overwhelming evidence of all the counts of conviction. Well, how do the counts of conviction differ from the counts where the jury was hung? They don't. They don't really in any substantial way. Doesn't that suggest that there's some doubt, or at least it's close enough, that some of the jurors were not willing to convict on all of the counts, and maybe they don't convict on some other counts if this evidence is never heard? Well, I don't believe so, Your Honor. I think that the evidence or the statements go generally to his culpability. And so in that way, first of all, the probative value of them is pretty slight. I mean, the prosecutor tried to make an argument in rebuttal to say that it was probative because when he said he shouldn't have been there because he should have shot his way out, that that was to show that he had been involved in bank robberies. Again, the judge said, no, that's not probative of that, and, jury, you can't consider it for that because, in fact, we don't even know if he had been charged with a bank robbery or anything along those lines. So first, I think we have to take into account the effect of the curative instruction. And second, to the extent that there was any probative value to these statements, it sort of covered all the counts, which is all the bank robbery. It wasn't specific to a specific count because, in fact, the May 30th attempted robbery or conspiracy to rob a bank wasn't part of the charges. And so because of that, it covers just very generally all of the bank robbery conduct. And since it does that and we know that the jurors were able to differentiate between all the different counts, I think that shows that there was very little value to these statements. So I would argue that that shows that it was harmless. And with respect to the Doyle error, I'd like to touch on that pretty quickly. We don't believe that the argument that the prosecutor made in his rebuttal amounted to Doyle error because it was not a comment on Johnson's silence. What it was was a comment, as in Anderson v. Charles, the Supreme Court case that's cited in the government's briefing. It was a comment on what Johnson actually did say. So in the car, what he did say was, you know, I shouldn't be here. I should have shot my way out. And the prosecutor said, well, if you look at that, what he's saying is that he shouldn't be there because he should have shot his way out. He's not saying that he shouldn't have been there because he didn't commit any robberies and that he's completely innocent. And this is inconsistent with his defense at trial. So that's permissible by this Supreme Court and this Court's precedent. And because of that, it was not Doyle error to the extent that it could have been misconstrued as such error. Certainly the Court's very detailed instruction was curative. And so we would ask on these grounds, on all grounds, for this Court to affirm the District Court's findings. If there are no other questions? We thank you for the argument. Thank you very much, Your Honor. We thank both counsel for the argument. The case just argued is submitted.
judges: Wallace, Noonan, Clifton